CASE 17—PETITION  EQUITY—OCTOBER 31.

# The First National Bank of Covington v. The D. Kiefer Milling Company.

APPEAL FROM KENTON CHANCERY COURT.

95   97
o106   19
106   84
106   85

95   97
109   320

1. ATTACHMENTS.—The single fact a defendant has no property in this State subject to execution, or not enough thereof to satisfy the plaintiff's demand, is not sufficient to authorize an attachment, but the additional and independent fact that the collection of the demand will be endangered by delay in obtaining judgment or a return of no property found must also be alleged and shown.
2. ASSIGNMENTS FOR CREDITORS—PRIORITY OVER ATTACHMENT.—In a contest between equities that which is prior in time must prevail. Therefore, as an assignee for the benefit of creditors acquires an equitable title by the delivery to him of the deed of assignment duly executed and acknowledged, although not lodged for record, his equity

The First Nat'l Bank of Covington v. The D. Kiefer Milling Co.

is superior to that created by the subsequent levy of an attachment upon the property assigned.

3. CORPORATIONS—DEBTS INCURRED IN EXCESS OF AMOUNT ALLOWED· BY CHARTER.—A person dealing with a corporation must, at his peril, take notice of its charter or articles of incorporation. Therefore, where the articles of incorporation provide that the company shall not incur any liability in excess of a certain amount, one who· makes a loan to the corporation in excess of that amount is not. entitled, in the event of an assignment by the corporation for the benefit of creditors, to a *pro rata* upon that part of his debt in excess of the amount the corporation was allowed by its articles to incur.

In this case the indebtedness of the corporation was limited by its articles to $30,000. A bank made a loan of $77,000 to the corporation. Subsequently the corporation made an assignment for the benefit of creditors. In this action for a settlement and distribution of the assigned estate, *Held*—That the bank is entitled, as against other· creditors, to a *pro rata* upon only $30,000 of its debt. What would be the rights of the bank if there were no other creditors is not determined.

J. F. & C. H. FISK FOR APPELLANT.

1. The bank was entitled to an attachment under the second subdivision of sec. 194 of Civil Code. (Burdett v. Phillips & Bro., 78 Ky., 246; Francis v. Burnett, 84 Ky., 80.)

2. A deed of assignment does not convey even an equitable title until lodged for record. (Gen. Stats., chap. 24, sec. 10.)

3. The alleged deed of assignment was inoperative while it remained in Graziani's office, because whether it should ever operate or not was to depend upon events to occur or to be ascertained thereafter. (Ware v. Allen, 128 U. S., 590.)

4. An assignee for creditors is not a purchaser for value, but stands merely in the shoes of the assignor. (Bank of Commerce v. Payne & Viley, &c., 86 Ky., 446; Kleine, Timberman & Co., v. Nie, &c., 11 Ky. Law Rep., 583.)

5. There was, in fact, no organization to execute a deed of assignment, and all acts done in the name of the company were absolutely void. (Brent v. Bank of Washington, 10 Pet., 615; Union Bank v. Laird, 2 Wheat., 390; Kenton Ins. Co. v. Bowman, &c., 84 Ky., 436.)

6. The purpose of the assignment was to put the property in a condition so that the bank could not reach it by an attachment, and therefore the assignment is void. It is the purpose with which the grantor acts that characterizes the conveyance and renders it fraudulent under the statute. (Bank of Commerce v. Payne & Viley, 86 Ky., 463.)

7. The sales of drafts on and after the 11th day of December, during the next ensuing ten days, were not loans to the milling company. It was only when the bank presented the drafts to the drawees and the

The First Nat'l Bank of Covington v. The D. Kiefer Milling Co.

bills were dishonored that the milling company became liable thereon to the bank. Therefore the bank was an unwilling creditor. (Herndon v. Louisville Banking Co., 10 Ky. Law Rep., 584.)

8. If a corporation exceeds its powers it is accountable to the State, but it can not turn upon its creditors and destroy their debts because it has secretly violated its own charter. It is estopped to deny its liability. (Mason & Foard Co. v. Main Jellico Mountain Coal Co., 87 Ky., 473; Green's Brice's Ultra Vires, 162; *Idem,* note, pp. 372, 373, 374; Railroad Co. v. McCarthy, 96 U. S., 266; Morawetz on Private Corporations, secs. 30, 31, 46, 47, 50, 62–65, 75–79, 97, 98, 100, 103, 105; Hotel Co. v. Wade, 97 U. S., 13; Twin Lick Oil Co. v. Marbury, 91 U. S., 587; Insurance Co. v. McCain, 96 U. S., 84; Sanderson v. Iron and Nail Co., 34 Ohio St., 442; Gold Mining Co. v. National Bank, 96 U. S., 640; Bigelow on Estoppel, pp. 419, 422, 423 and notes; New York & New Haven R. Co. v. Schuyler, 34 N. Y., 30, 73; Vining *et al.* v. Bricker, 14 Ohio St., 331, 335; Harris v. Runnels, 12 How., 79–87.)

9. The attachments must prevail against the fraudulent deed, and against any and all claims preferred or asserted by Graziani. (Moffatt v. Ingham, 7 Dana, 496; Lyne, &c., v. Bank of Ky., 5 J. J. Mar., 556; McKinley, &c., v. Combs, &c., 1 Mon., 106; Hord's Adm'r v. Rust, &c., 4 Bibb, 232; German Ins. Co. v. Nunes, &c., 80 Ky., 334; Lowry v. Fisher, &c., 2 Bush, 70; Stewart & Co., v. Hall, &c., 3 B. M., 221; Byrd v. Bradley, 2 B. M., 239.)

JAMES P. TARVIN FOR APPELLEES.

1. The record shows that the bank had actual knowledge of the assignment before the order of attachment was issued; but even if it had not, this is a contest between equities, and the equity created by the execution, acknowledgment and delivery of the deed of assignment is senior to the equity created by the order of attachment. (Gen. Stats., chap. 24, sec. 10; Rev. Stats., chap. 24, sec. 11; Forepaugh, &c., v. Appold & Sons, 17 B. M., 625–631; Righter, &c., v. Forrester, &c., 1 Bush, 278; Baldwin & Co., &c., v. Crow, &c., 86 Ky., 679; Helm v. Logan's Heirs, 4 Bibb, 78; Campbell v. Mosby, Litt. Sel. Cases, 358; Graham v. Samuel, 1 Dana, 166; Morton v. Robards, 4 Dana, 258; Halley v. Oldham, 5 B. Mon., 233; Low & Whitney v. Blinco, 10 Bush, 331; Zaring v. Cox's Assignee, 78 Ky., 529; Citizens' Savings Bank v. Hibbs, &c., 11 Ky. Law Rep., 441; Swigert v. Bank of Ky., 17 B. M., 268; Bailey & Carter v. Welch, 4 B. Mon., 244; Russell v. Peters, &c., 10 B. M. 186.)

2. The deed of assignment was not fraudulent. (Bank of United States v. Huth, &c., 4 B. M., 423; Bank of Commerce v. Payne, Viley & Co., &c., 86 Ky., 446; Moore, Bremaker & Co. v. Stege & Reiling, 13 Ky. Law Rep., 948; Christopher v. Covington, 2 B. Mon., 358; Vernon v. Morton, 8 Dana, 263; German Ins. Co. v. Nunes, 80 Ky.,

100 · KENTUCKY REPORTS. [Vol. 95.

The First Nat'l Bank of Covington v. The D. Kiefer Milling Co.

334; 5 Ohio St. Rep., 124; Deposit Bank of Carlisle, &c., v. Lee, &c., 13 Ky. Law Rep., 495.)

3. The right to an attachment under subsection 2 of section 194 of the Civil Code was not made out. (Burdett v. Phillips & Bro., 78 Ky., 246; Francis v. Burnett, 84 Ky., 23; Jenkins v. Jackson, 8 Bush, 373.)

4. The bank was bound to know the provisions of the articles of incorporation limiting the right of the company to create debt, and can not be heard to disclaim such knowledge. (Morawetz on Private Corporations, vol. 2, secs. 579, 580, 581, 591, 592, 595, 600, 601; Sanford v. McArthur, 18 B. Mon., 411; Gen. Stats., chap. 56.)

CLEARY & HAMILTON of counsel on same side.

JUDGE LEWIS delivered the opinion of the court.

Prior to December, 1888, "The D. Kiefer Milling Company," incorporated under chapter 56, General Statutes, of which D. Kiefer was president and principal stockholder, had done a large and apparently profitable business; but by reason of the fraudulent conduct of George M. Kiefer, son of the president and secretary of the company, in discounting and receiving from The First National Bank proceeds, amounting to a large sum, of drafts purporting to have been drawn by the company, with which he fled the State, it was rendered insolvent; and December 31, 1888, a meeting of its directors and stockholders was held, when a deed of assignment was directed made and was executed by D. Kiefer, the president. But without delivering the deed to the assignee, D. Kiefer, with hope and purpose of continuing the business, proposed an arrangement with "The First National Bank of Covington," whereby his wife was to furnish a large sum of money to enable the company to eventually pay its debts, and the bank was to advance a considerable sum to aid in carrying on the business in the meantime, about $14,000 of which was actually paid. That arrangement was not, however, fully carried out, because D. Kiefer died January 5, 1889. And January 7, 1889, The First National

The First Nat'l Bank of Covington v. The D. Kiefer Milling Co.

Bank of Covington brought an action against The D. Kiefer Milling Company for judgment on numerous demands aggregating about $77,000, seeking and obtaining at the same time an attachment for the second class of causes provided in section 194 Civil Code.

It appears plaintiff's petition was filed in the clerk's office, and the attachment issued and placed in the hands of the sheriff at 1:15 o'clock P. M. But the evidence shows that there was on the same day a meeting of stockholders of The D. Kiefer Milling Company, by whom W. S. Kiefer was elected president in place of D. Kiefer, deceased, and a resolution passed for execution of a deed of assignment for benefit of creditors. And in pursuance thereof a second deed was executed and acknowledged by W. S. Kiefer, president, and the secretary of the company, and delivered to the assignee about 9 o'clock A. M.; but the assignee, B. F. Graziani, did not lodge the deed for record until 2:45 o'clock P. M. of the same day, withholding it to await the result of a meeting with the president and directors of The First National Bank of Covington, which, it appears, was on January 5th, day of D. Kiefer's death, agreed to be held on January 7th. Subsequently a second action was instituted by the bank and another attachment obtained, which was consolidated and tried with the first. But, upon final hearing, both attachments were discharged, the deed of assignment adjudged valid and effectual, and proceeds of property conveyed, amounting to about $30,000, directed to be distributed and paid *pro rata* to creditors of The D. Kiefer Milling Company, only the amount of $30,000 of the $77,000 claimed by The First National Bank being, however, adjudged to be thus ratably paid.

The first question naturally arising is whether the deed of assignment is effectual for any purpose.

There is no evidence it was executed with any other intention on part of the grantors than to thereby secure a fair, legal and just distribution of the estate of The D. Kiefer Milling Company, then insolvent, among all its creditors. Nor do we think, as counsel argues, the deed is invalid by reason of the want of authority in W. S. Kiefer to make it as president, for the evidence shows there was a regular election by the stockholders, and he was duly chosen. Moreover, the summons on plaintiff's petition was served on, and a copy of the order of attachment was delivered by the sheriff to, W. S. Kiefer, as president of the defendant, which, it is to be presumed, was done by direction of the plaintiff.

As the second action was not commenced until after the deed was lodged for record, clearly the attachment in that case can not prevail. The reason stated by the lower court for discharging the attachment issued in the first action is that, although defendant did not, as stated in the petition, have property in this State subject to execution, or not enough thereof to satisfy the plaintiff's demand, the collection of it would not, as alleged, have been, in meaning of section 194 Civil Code, endangered by delay in obtaining judgment, or a return of no property found.

According to the language there used, the single fact a defendant has no property in this State subject to execution, or not enough thereof to satisfy the plaintiff's demand, is not sufficient to authorize an attachment; but the additional and independent fact that the collection of the demand will be endangered by delay in obtaining

judgment, or a return of no property found, must also be alleged and shown.   It was, it is true, held in Burdett v. Phillips & Bro., 78 Ky., 246, that the two facts are concomitant, and the latter followed as a consequence of the former.   But in Francis v. Burnett, 84 Ky., 30, the ruling in which is adhered to, it was held the Legislature evidently intended the latter to have an independent meaning, and that it did not always or necessarily follow that because the defendant did not have property enough subject to execution to satisfy plaintiff's demand, the collection of it would be endangered by delay in obtaining judgment or a return of no property found.   But whether the plaintiff in this case did actually show existence of both facts we need not consider, because the judgment appealed from can and ought to be affirmed on another ground.

The deed of assignment having, as we think, been clearly executed with no fraudulent intent, the contest is between The First National Bank of Covington, seeking, in virtue of attachment, to absorb the entire estate of the insolvent company, and other creditors claiming under the deed a *pro rata* distribution as provided by statute.

Section 10, chapter 24, General Statutes, is as follows: "No deed of trust or mortgage conveying a legal or equitable title to real or personal estate shall be valid against a purchaser for a valuable consideration without notice thereof, or against creditors, until such deed shall be acknowledged or proved, according to law, *and lodged for record."*

The evidence shows the deed of assignment was duly executed, acknowledged and delivered to the assignee, and he thus acquired an equitable title to the estate before plaintiff commenced its action, or the order of attach-

ment was issued; and as, according to repeated decisions, of this court, a creditor acquires by attachment only a lien upon, or an equitable right to, property levied on, it necessarily follows that we have in this case simply a contest between equities; and applying the doctrine that in such state of case the equity which is prior in time must prevail, there is no other alternative but to decide that the deed of assignment in this case prevails against the attachment. Such has been the construction and application so often given by this court to the statute quoted that it is needless to even cite the cases.

It appears that there was in the articles incorporating "The D. Kiefer Milling Company," a provision that the company should not, in any event, incur any liability or indebtedness in the aggregate in excess of one-half its capital stock *bona fide* subscribed, which was $60,000.

The articles of incorporation were, as required by statute, recorded, and, independent of presumed notice by The First National Bank of Covington, of the provision in regard to the limit of indebtedness The D. Kiefer Milling Company was empowered to contract, it is a well settled rule that a person dealing with a corporation must, at his peril, take notice of its charter or articles of incorporation. (See Morawetz on Private Corporations, volume 2, sections 591, 592.)

Whether if this was simply a contest between the bank and the milling company, violation and disregard by the latter of the provision of the articles of incorporation would be a sufficient defense, we need not determine; but the enforcement of that provision is demanded by the assignee for benefit of other creditors, who have been prejudiced by the unauthorized and illegal dealing of the

bank with an unfaithful officer of the milling company, whereby its insolvency was precipitated, if not actually caused; and, in such case, a participant in the fraudulent transaction, not other innocent creditors, should suffer.

The judgment is affirmed.