## Hind, Receiver, et al. v. Cook & Company, et al.

(Decided March 25, 1924.)

### Appeal from Kenton Circuit Court
### (Common Law and Equity Division).

1. Contracts—Void if Made Otherwise than in Manner Provided by Statute.—A statute prohibiting the making of contracts, except in a certain manner, ipso facto makes them void if made in any other way.

2. Corporations—Corporation has Only Powers Granted and those Incidental.—A corporation, being purely a creature of the law, has no powers except those granted to it, and such incidental powers as are necessary to carry into effect those expressly granted.

3. Contracts—Contracts Void which Contravene Law.—Contracts which contravene the Constitution, statutes, or public policy of the common law are void, whether by an individual or a corporation, even though not malum in·se.

4. Insurance—Assessment Fire Insurance Written Out of Territory Prescribed in Certificate of Incorporation Void.—Where a co-operative or assessment fire insurance concern organized under Ky. Stats., section 702 et seq., writes insurance out of the counties named in its certificate of incorporation, and the certificate is not amended as permitted by section 720, and the company becomes insolvent, a receiver cannot make assessments on members insured outside the territory prescribed to pay obligations of the company, contracts out of the prescribed territory being void.

JOHN H. KLETTE and JOHN E. SHEPARD for appellants.

R. C. SIMMONS and HEAVRIN & MARTIN for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON— Affirming.

Some time in 1915 the Indemnity Fire Insurance Company, a corporation organized under section 702, et seq., Kentucky Statutes, was, at the instance of its creditors, placed in the hands of a receiver, the appellant Hind being named by the court. That company was what is commonly known as a co-operative or assessment fire insurance concern. The section of the statutes under which it was organized reads in part:

"Twenty-five or more persons residing in any one or more adjoining towns or in any county, or in not exceeding ten adjoining counties, who collect-

ively own property of the value of fifty thousand dollars or more may become a corporation for the purpose of co-operative or assessment insurance against loss or damage of property by fire, wind, lightning, or the explosion of natural or artificial gas, by making and acknowledging a certificate setting forth their intention to form such a corporation, the county or counties, town or towns in which it intends to do business, its corporate name, and the place where its principal office is to be located. Every person insured in such a corporation who shall sign an application for insurance as required by the certificate of incorporation or the by-laws of the corporation shall thereby become a member thereof."

The next section of the statutes relating to such insurance concerns provides that each corporation, if confined to the town, shall have not less than five directors, and if in a county or county and town not less than eleven directors, to be chosen from members of the corporation and to have full charge and management of the affairs as a company for one year or more, but in no event beyond four years. The next section provides when business may be commenced and the duty of the said insurance commissioner. The next section provides for books to be used by the concern and what they shall show. The next section prescribes the character of contract and policies to be issued, and the amount of risk. The next, form of undertaking, notice of loss, adjustment; and the next section, 708, relates to classification of property. The next, the right of the corporation to borrow money; and the next section to membership fees and policy fees and assessments, collection of. The next relates to reserve fund, uses and distribution. The next section to assessments, notice and requisites, which reads:

"Section 711.    The secretary shall, after any assessments have been made, notify every member of the corporation, by written or printed notice, bearing the name of the secretary, stating the amount due the corporation from the members, the time when and to whom it shall be paid, and the use to be made of the money collected. Such time shall not be less than thirty days nor more than sixty days from the service of the notice, which notice may be served

personally or by mail, and, if by mail, service shall be deemed complete when deposited in the post office at the place where the principal office of the corporation is located, directed to each member at the last post-office address given by the insured to the secretary of the corporation and postage prepaid."

Section 712 relates to assessment; penalty for failing to pay; action to recover; lien; exclusion of delinquents, and reads in part:

"An action may be brought by the corporation against any member thereof to recover all assessments which he may neglect or refuse to pay, made upon him under the provisions of this act, or by the by-laws of the corporation."

Section 712A limits the liability of members, and reads in part:

"If the whole amount of the deposit notes and cash belonging to any such corporation shall not be sufficient to pay the amount due at any one time to the members of such corporation on account of losses occasioned by fire, lightning or wind, the limit of liability of each member of the corporation on account of any assessment that may be required to meet the deficit shall not exceed the following rates and amounts to-wit: Upon each member of the corporation having less than five hundred thousand dollars insurance in force, ten dollars for each one hundred dollars of insurance he has in said corporation. . . . "

This company had less than five hundred thousand dollars insurance in force and therefore comes within the above provision of the statutes.

Section 713 of the statutes provides what property and the kinds that may be insured, and reads:

"No corporation formed for the purpose specified in this act shall insure any buildings or property *out of the limits of the territory comprised in its certificate of incorporation,* except when a member lives on or near the boundary line and has property both within and without the prescribed bound-

ary, that without such boundary may also be insured.''

Section 720 Kentucky statutes reads:

''Any such corporation doing an insurance business under the articles of incorporation issued to it by the insurance commissioner may by a majority vote of the membership of the company, or by a majority vote of the board of directors of such corporation at any meeting thereof where there is a legal quorum of directors in session, change the territory in which it is incorporated to do business to as few or as many counties in Kentucky as they may see fit to include in their territory and the change of territory shall be effective upon filing a proper certificate of such action by members or board of directors with the insurance commissioner of Kentucky.''

In its articles of incorporation the company set forth the following counties in which it intended to do business, as required under section 702 Kentucky Statutes: Kenton Campbell, Bracken, Pendleton, Owen, Mason, Fayette, Harrison, Grant and Scott. It never thereafter amended its articles so as to extend the territory in which to do business as it might have done under section 720, copied above. Notwithstanding this fact it soon began to do business in many other counties in the state by writing policies of insurance, receiving members into the corporation and collecting premiums, dues and assessments, until at the time the company went into the hands of the receiver it had a large amount of business in counties far removed from those named in its charter. After the appointment of the receiver and the ascertainment of the amount of the indebtedness of the concern, together with the number of policyholders and the amount of their several policies, the court directed the receiver to levy an assessment of ten per cent, the maximum of assessments allowed on policies held by the members of the corporation, and this was done. Many of these policyholders denied liability, some upon one ground and some upon other grounds. Judgment was taken by default against a large number of them who did not defend, in sums ranging from a few dollars up to $200.00 each.

Those who failed to pay but made defense were included in a second group in which the receiver by affirmative pleading set forth all the facts, alleging in substance that during the time that the policies were in force the insurance company sustained losses aggregating $11,000.00 and that it was without funds with which to pay same, and that this was the state of affairs of the concern at the time of the appointment of the receiver; that the court authorized a levy of a ten per cent assessment of the amount of the policies; that the assessments were due and that the policyholders declined to make payment and set out the separate amounts due, concluding with a prayer that the Indemnity Fire Insurance Company, through its receiver, have judgment against each of the defendants named, of whom there are a great number, for the amounts set opposite their names and for cost, etc.

Certain of the defendants filed joint and separate answers by which they put in issue the averments of the pleadings filed by the receiver. Among other things the policyholders averred that the company was organized by Charles W. Evans and many other citizens of Campbell and Kenton counties in 1914, and that the original articles of incorporation were filed with the insurance commissioner of Kentucky as directed by law and that in said articles the names of the incorporators and counties in which the said Indemnity Fire Insurance Company expected to do business, namely, Kenton, Campbell, Bracken, Pendleton, Owen, Mason Fayette, Harrison, Grant and Scott, and that the foregoing and none other were the only counties named in said original articles; that the county of Ohio, the county in which these defendants lived and in which the property covered by their policies of insurance is located, was not named or set out in the said articles of incorporation as one of the counties in which the said Indemnity Fire Insurance Company expected to do business. They further pleaded that the corporation did not exercise its rights under section 720a to change the limit of the territory in which it was incorporated to do business, and that Ohio county had never been included as a part of the territory in which it could do business. They then pleaded section 713, copied above, which limits the right of the company to do business in territory designated in its articles of in-

corporation.   To this answer a general demurrer was interposed and carried back to the affirmative pleadings of the receiver, and, after argument, sustained by the trial court.  Appellant Hind, receiver, declined to further plead, whereupon his answer as to these defendants was dismissed and he appeals.

The learned trial judge gave the questions involved careful consideration and prepared and made a part of his judgment an opinion, which we regard as sound, and which we adopt in part.  In the case at bar the company insured the property of the defendants, G. S. & J. P. Gordon in Logan county, which was not one of the counties in which its certificate of incorporation authorized it to do business, and by the demurrer to second paragraph of their answer the question is raised, the company being insolvent and in the hands of a receiver for settlement, whether by reason of the fact of the insurance being taken out of the territory prescribed presents a good defense to the payment of an assessment made against them to pay the obligations of the company.

Where a statute expressly declares that certain kinds of contracts shall be void, says 13 Corpus Juris, page 420, there is then no doubt of the legislative intention, and an agreement of the kind voided by statute is unlawful.   The same is true where the contract is in violation of a statute, although not therein expressly declared to be void.  It is immaterial whether the thing forbidden is *malum in se* or merely *malum prohibitum*. A statute prohibiting the making of contracts except in a certain manner *ipso facto* makes them void if made in any other way.

> "Illegality and want of power to contract on the part of the corporation have the same effect as in the case of other contracts."   14 Corpus Juris 529.

A corporation being purely the creature of the law has no powers except those granted to it, and such incidental powers as are necessary to carry into effect those expressly granted.

> "Every corporation has by necessary implication the power to do whatever is necessary to carry into effect the purposes of its creation, *unless the doing of the particular thing is prohibited by law or*

*by its charter.* The meaning is that whatever may be fairly authorized by the charter of a corporation will not be held by judicial construction to be *ultra vires, unless expressly prohibited."* 10 Cyc. 1098.

"Perhaps the most general statement that can be made of the doctrine of *ultra vires* is to say that a contract of a corporation which is unauthorized by, or in violation of, its charter or other governing statute or entirely outside of the scope of the purposes of its creation, is void in the sense of being no contract at all, because of a total want of power to enter into it; that such a contract will not be enforced by any species of action in a court of justice; that being void *ab initio* cannot be made good by ratification, or by any succession of renewals; and that no performance on either side can give validity to the unlawful contract or form the foundation for any right of acting upon it." 10 Cyc. 1146.

The decisions of Kentucky are not in accord with the statement of the law above in so far as it relates to *ultra vires* contracts being void. The word "unlawful" as applied to contracts may mean either that it is unlawful in that the corporation has not the power to make it conferred by its charter, or it may mean that it is prohibited by the constitution or laws of the state, or public policy or the common law. It may be said that the court of Kentucky have not held that the mere want of a grant of power to make a contract by a corporation rendered the contract void, but upon the contrary have adjudged rights based upon such contracts and permitted them to be used as defenses and applied the doctrine of estoppel to them. But contracts which contravene the Constitution, statutes or public policy of the common law are declared void, whether by an individual or corporation. It may be contended that this contract is not *malum in se,* and does not contravene any law or public policy affecting morals or any matter over which the police power may be exercised; that it was not unlawful to insure property in Logan county if it had only designated it as one of the counties in which it was to do business, and that it might have done so at its option; that there was no public policy involved in the prohibition preventing it from insuring in counties other than the ones designated,

and that no penalty was attached to the doing of the act; that the prohibition of the statutes was simply one defining the powers of a corporation and that any violation of it should be treated only as an *ultra vires* act, and that thereby the contract was not rendered void or unenforceable. The fallacy of this contention, it seems to us, is that it attributes to the courts the power to determine the existence or absence of public policy in an act of the legislature, or statute, but while controverting the power of the legislature to enact it, and further assumes that the legislature did not have any matter of public policy in mind in prohibiting the insurance to be made in some county other than those designated in the charter of the company. The court is of the opinion that the public policy of the state is to be found not only in the judicial opinions of courts as applicable to acts not prohibited by statute, and growing out of the common law but is found and even made by the statute law of a state, and that where contracts are prohibited by statute that courts will not inquire into the reasons for it, for the purpose of determining whether in its opinion the legislature had a proper, or such a reason for prohibiting the act, as courts might ascribe to it a proper public policy. It is true, that in declaring contracts void as against public policy arising out of the common law, the courts almost invariably trace out the reasons for it; and sometimes where it has declared contracts invalid for violation of a statute, it traces out the purpose of the statute and the policy involved in it. This is so because the statute does not expressly prohibit the contract, or render it invalid, but the invalidity grows out of the fact that such contracts would contravene the purpose of the act, though not expressly prohibited or declared invalid by the statute. We have not been able to find any case wherein the court has held that contracts are valid or enforceable where a *statute* expressly provides that such a contract shall not be made, and many of them declare that the public policy of the state is to be found in its statute, and in fact statutes make public policy, so to speak. Public policy may exist in a statute authorizing the formation of co-operaitve insurance companies, and in prescribing in what territory they may insure property, and in requiring the designation of such territory to be made public in their charters, and a prohibition to

make particular contracts does not make the violation of it a mere *ultra vires* contract, but leaves it prohibited by the statute as a matter of public policy. Hayes v. W. Va. Oil & Gas Company, 183 Ky. 622; Lincoln Court Realty Co. v. Ky. T. S. B. Co., 169 Ky. 840; Yellow Chief Coal Co. v. Johnson, 166 Ky. 663; Gordon v. Gordon's Admr., 168 Ky. 409; Gathright v. H. M. B. Co., 154 Ky. 106; Oliver v. Louisville Realty Co., 156 Ky. 628; Cruin Colnon Cont. Co. v. Chatterson, 146 Ky. 504; Krell, etc. v. Dengler, 145 Ky. 202; Northwestern Ins. Co. v. Avant, 132 Ky. 106; Johnson v. Mason Lodge No. 33, 106 Ky. 838; Rash v. Farley, 12 R. 913; Lindsey v. Rutherford, 17 B. Mon. 245.

The court is of the opinion that the demurrer to the third paragraph of the answer should be sustained because section 709 of the statutes fixes the liability of the members, which can not be changed by by-laws or contracts of the corporation. Wherefore the judgment is affirmed.

Judgment affirmed. Whole court sitting.