# Wilson, Banking Commissioner, et al. v. Louisville Trust Company.

(Decided February 16, 1932.)

W. G. DEARING and J. M. ROBISON for appellants.

SQUIRE OGDEN and HENRY M. JOHNSON for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

This appeal presents for interpretation and the application of sections 165a-1 to 165a-22, Ky. Statutes, inclusive, to the facts appearing herein, in respect to the authority, power and duty of the banking commissioner when a bank organized under the laws of this state posts on its front door a notice signed by a majority of the directors in their own handwriting, stating, "This bank is in the hands of the banking commissioner" and forthwith notifies him of such act.

A bank within the meaning of the statutes includes all banks, trust companies, savings banks, combined banks, real estate mortgage companies engaged in the business of making mortgage loans on real estate and the selling and offering bonds or its own obligations secured by such notes or bonds, and combined banks and trust companies.

The status of the commissioner, when acting by virtue of the statutes, is that of a trustee, assignee, or receiver (Cartmell v. Commercial Bank & Trust Co., 153 Ky. 798, 156 S. W. 1048; Ex parte Smith, Banking Commissioner, et al., 160 Ky. 83, 169 S. W. 582), but, whether he be regarded as the one or the other, his duties are the same.

The procedure prescribed by the statutes, for the liquidation of an institution designated therein, is exclusive. The statutes prescribe an adequate and safe method for liquidating the insolvent corporations included therein. Commonwealth ex rel. Denny, Banking Commissioner, v. Hargis Bank & Trust Co. et al., 233 Ky. 801, 26 S. W. (2d) 1045. However, the vital question in this case is not so much a question of duty or power of the commissioner as it is a question of his right and power under the facts of this particular case.

In July, 1926, the Title Guarantee Trust Company was incorporated under the laws of this commonwealth. The nature of its business to be promoted, transacted, and carried on, and its objects and purposes, are set forth in its articles of incorporation. The third article thereof states the business to be that of a trust company, "with the power and right to receive deposits and pay interest thereon." The appellant in his presentation of the case has considered it as a bank engaged in the business of banking. The appellee concedes this, and claims that it was at the same time engaged in the business of a trust company. This relieves us of the duty of determining whether it was or was not engaged in the banking business or that of a trust company, or both.

A corporation may not engage in a business. other than that expressly authorized by its articles of incorporation or amendments thereto. Section 192, Constitution of Kentucky; section 567, Ky. Stats.; German Ins. Co. v. Com., 141 Ky. 606, 133 S. W. 793. Its powers are only such as are conferred by its charter, and such as are necessarily incident thereto, or necessary to carry into effect those expressly granted. Hind v. Cook & Co., 202 Ky. 526, 260 S. W. 349.

On the 22d day of June, 1931, the board of directors of the Title Guarantee Trust Company closed its doors, posted the notice required by the statutes, and so informed the banking commissioner, C. S. Wilson.

Thos. W. Sweat was first appointed by Wilson as liquidating agent. Sweat resigned, and Oscar Bishop was appointed in his stead, and qualified as provided by law. The business and assets of the Title Guarantee Trust Company were turned over by it to the liquidating agent for the banking commissioner, in accordance to the statutes. Its capital stock was $300,000, divided into 3,000 shares of common stock of the par value of $100 each. The highest amount of indebtedness authorized to be incurred by it at any time was not exceeding $10,-000,000, except its liability on account of trust funds as a fiduciary and to depositors, and its obligations as indorser, guarantor of bonds, notes, or other instruments, secured by mortgage or unsecured, was unlimited. Desiring to engage in loaning money in the state of Tennessee, a corporation was organized in that state for that purpose. Its capital stock was $300,000 which was loaned in that state. The Title Guarantee Trust Com-

pany desired to issue and to sell its mortgage bonds in the denomination of $100, $500, and $1,000. To effectuate its purpose, on the 14th day of April, 1927, it entered into a written agreement with the Louisville Trust Company, a corporation organized under the laws of the state of Kentucky, wherein the duties and obligations of both the Title Guarantee Trust Company and the Louisville Trust Company were elaborately set forth in detail. The Louisville Trust Company accepted the office .of trustee, and agreed to perform the trust as set forth in the instrument. The bonds of the Title Guarantee Trust Company were payable to bearer and the form thereof was set out in the trust agreement. One provision of the bond is in this language:

"To secure the payment of this bond and of all other bonds provided for in said agreement (the trust agreement) together with the interest thereon, there has been assigned to and deposited with the Louisville Trust Company as trustee, securities which are authorized for investment by the trust company under the laws of the State of Kentucky which have been approved by the trustee, or bonds secured by first mortgage on real estate, notes or other obligations or cash as described in said trust company agreement, the principal (estimating first lien real estate bonds at par and other securities pledged at 95% of their market value) not less than the par value 'of all bonds issued under this agreement and to be held in trust by said trustee and its successors and assigns for the benefit of the holders of said bonds according to the above mentioned trust agreement.' "

In section 3 of the articles of trust agreement it is provided: "That each bond, note or other lien on real estate which it (the Title Guarantee Trust Company) shall at any time deposit with the assignee under this agreement with the trustee (Louisville Trust Company) as collateral security shall be a first lien upon said real estate for an amount that is not in excess of three-fourths of the value of the property covered thereby as appraised for the Trust Company by an independent qualified appraiser. . . . It is hereby agreed that the Trust Company may issue its bonds from time to time, that the bonds may be of different denominations or amounts, and

bear different maturities and different rates of interest, and that the bonds shall be numbered serially from one upward.''

Elsewhere it is provided in the agreement that, as circumstances require, the Title Guarantee Trust Company will deliver to the trustee collateral security as provided in the articles of trust, and that

"The said collateral security is assigned and delivered to the Trustee . . . and shall form a part of the trust fund hereby created and shall in all respects be subject to the provisions of the agreement . . . and that all of the Trust Company bonds issued hereunder shall have the same claim on the collateral security comprising the trust fund, as if all of said bonds had been issued at one time and were in all respects identical.''

The trust agreement, prior to the time the Title Guarantee Trust Company went into the hands of the banking commissioner, was fully executed by it and the Louisville Trust Company. In the process of its execution, the Title Guarantee Trust Company issued, sold, and delivered to divers purchasers its bonds, amounting to $2,205,000, which were secured by collaterals assigned and delivered to the Louisville Trust Company in accordance to the provisions of the trust agreement, aggregating $2,409,437.24, or $194,437.24 in excess of the face value of the bonds.

Before the Title Guarantee Trust Company passed into the commissioner's hands, it had 2,000 depositors, with $100,000 on deposit, but they were satisfied by the Title Guarantee Trust Company by the return to them of their deposits. Their rights and the $100,000 are not here involved. The commissioner instituted this action to recover of the Louisville Trust Company the possession of the collateral assigned and delivered to it under the trust agreement. Judgment was entered dismissing his petition. He appeals.

It is insisted by the banking commissioner that the moment the assets, affairs, and business of the Title Guarantee Trust Company went into his hands, he became entitled to the absolute, independent control, management, and possession of all of the collateral security which had been assigned in virtue of the trust agreement by the Title Guarantee Trust Company to the Lou-

isville Trust Company. The trust agreement prescribes the duties and obligations of the Title Guarantee Trust Company and the Louisville Trust Company, in relation to the collateral security when a default in the payment of interest thereon occurred. The banking commissioner insists there had been no such default, and that there is no provision in the trust agreement anticipating the closing of the business of the Title Guarantee Trust Company, and that therefore the trust agreement has terminated and all duties and rights thereunder of the Louisville Trust Company have ended.

Finally he insists that, although the title to the collateral passed to the Louisville Trust Company by the assignment of the Title Guarantee Trust Company on its ceasing to engage in business because of its insolvency, the life of the trust agreement became extinct.

To support this contention, he argues that the trust agreement and the assignment and delivery of the collateral to the Louisville Trust Company were ultra vires acts, and therefore void.

It cannot be doubted that the Title Guarantee Trust Company was clothed with statutory power to issue, secure with collateral, and to sell its bonds or notes for cash in any amount, not in excess of the limitation of indebtedness fixed in its charter and for which it could secure purchasers.

Section 614, Ky. Stats., provides:

> "The capital stock of a trust company, and the funds in its possession, not held in a fiduciary capacity, may be invested in such manner as the directors deem prudent and safe; and the funds held in a fiduciary capacity shall be invested under the order of the court, or in such manner as may be provided by law for the investment of other trust funds; and the capital stock shall be primarily liable for the obligations of the corporation in its fiduciary capacity."

Section 4706, Ky. Stats., contains this language:

> "That it shall be lawful for persons or corporations holding funds in a fiduciary capacity for loan or investment, to invest the same in real estate, mortgage notes or bonds. . . ."

438

Section 612a authorizes the organization of a combined bank and trust company. Section 579, Ky. Stats., provides that, a state bank regularly organized is authorized, among other things,

> "to exercise, subject to law, such powers as may be necessary to carry on the business of banking by discounting and negotiating notes, drafts, bills of exchange, and other evidences of debt, and purchasing bonds, receiving deposits, and allowing interest thereon, buying and selling exchange, coin and bullion, and lending money on personal or real security, as provided in this article."

Other sections of the statute limit the amount of indebtedness in certain cases to certain borrowers. Petition of Hawesville Deposit Bank, 226 Ky. 236, 10 S. W. (2d) 819; Citizens' Bank v. Bank of Waddy, 126 Ky. 169, 103 S. W. 249, 31 Ky. Law Rep. 365, 11 L. R. A. (N. S.) 598, 128 Am. St. Rep. 282; Bel & Coggeshall v. Ky. Glass-Works Co., 106 Ky. 14, 50 S. W. 2, 1092, 51 S. W. 180, 20 Ky. Law Rep. 1684, 21 Ky. Law Rep. 133, 156; Fidelity Insurance, Trust & Savings Bank v. West Pa. & Shenango C. R. Co., 138 Pa. 494, 21A, 21, 21 Am. St. Rep. 911; Wood v. Corry Water-Works Co. (C. C.), 44 F. 146, 12 L. R. A. 168; Gilbert v. Citizens' National Bank of Chickasha, 61 Okla. 112, 160 P. 635, L. R. A. 1917A, 740; Albin Co. v. Commonwealth, 128 Ky. 295, 108 S. W. 299, 33 Ky. Law Rep. 367.

It cannot be doubted that, in the absence of fraud, the Title Guarantee Trust Company or the banking commissioner as its successor is without relief herein as against the rights of the bondholders and the trustee. Fidelity Insurance Trust & Savings Bank v. West Pa. & Shenango C. R. Co., supra; Gilbert v. Citizens' National Bank, supra; Greene v. Middlesborough Town & Lands Co., 121 Ky. 355, 89 S. W. 228, 28 Ky. Law Rep. 303, 11 Ann. Cas. 888; Underwood v. Newport Lyceum, 5 B. Mon. 129, 41 Am. Dec. 260; First National Bank v. Kiefer Milling Co., 95 Ky. 97, 23 S. W. 675, 15 Ky. Law Rep. 457; Lincoln Court Realty Co. v. Ky. Title Savings Bank & Trust Co., 169 Ky. 840, 185 S. W. 156.

There is no statutory provision, nor common law, prohibiting with a penalty such issuance of such bonds by the Title Guarantee Trust Company, and securing them by the assignment and delivery of the collateral to

the trustee and the selling them to purchasers, nor declaring them invalid in the hands of innocent purchasers for value. The method of issuing, securing, and selling the bonds of the corporation in the manner adopted is neither forbidden by the law nor against public policy. The method of issuing, securing, and selling the bonds were within the scope of the business and power of the Title Guarantee Trust Company. It held itself out to the public as possessed with the authority so to issue, secure, and sell its bonds through the instrumentality of a trustee. It is bound thereby as to innocent purchasers of the bonds which were so issued, secured, and sold within the scope of the authority which it held itself out to possess. It is not claimed that the bondholders are not innocent purchasers by virtue thereof or that the trustee is not acting bona fide.

An ultra vires contract is one foreign to the nature of the corporation or not within the expressed or implied authority in virtue of its charter to make; if the contract or its execution were a mere abuse of power, not tainted by fraud or clearly prohibited by statute or condemned by sound public policy, it cannot be impeached on the ground of ultra vires by the corporation or one representing it, where the corporation has received and retained the benefits of the contract. The corporation cannot set up such abuse of its own authority to defeat such contract. Eastman v. Parkinson, 133 Wis. 375, 113 N. W. 649, 13 L. R. A. (N. S.) 921. This principle was recognized as sound, and was enforced in Union National Bank of St. Louis v. Matthews, 98 U. S. 621, 25 L. Ed. 188; Fritts v. Palmer, 132 U. S. 282, 10 S. Ct. 93, 33 L. Ed. 317; Nashua & Lowell R. R. Corp. v. Boston & L. R. Corp., 164 Mass. 222, 41 N. E. 268, 49 Am. St. Rep. 454.

In Chicago v. Cameron, 22 Ill. App. 91; Id., 120 Ill. 447, 11 N. E. 899, it was held that a suit in equity was the proper procedure to have corporate bonds declared ultra vires and void, and to have a trust conveyance given to secure them released, where the bonds are regular on their face, and their invalidity depends upon extrinsic evidence. In such action both the trustee and the holders of the bonds are necessary and proper parties. This character of case is not here presented. The banking commissioner has no greater right to question a fully executed contract on the ground of ultra vires as against innocent purchasers for value and without notice than

has the corporation itself. His right to have the transaction annulled on the ground of ultra vires, to the detriment or prejudice of innocent parties, is identical with that of the corporation. Brown v. Schleier, (C. C.), 112 F. 577; Maryland Trust Co. v. National Mechanics' Bank, 102 Md. 608, 63 A. 70.

Thompson on Corporations (2d Ed.) vol. 3, sec. 2845, p. 762, states the rule in this language:

> "A receiver of a corporation succeeds to no rights beyond those which could have been enforced by the corporation itself, its stockholders or creditors. It follows that he cannot for example have a contract made by the corporation and which has been executed, set aside on the ground merely that it was ultra vires when the corporation itself would be estopped to raise the question, if not in the hands of the receiver."

If the Title Guarantee Trust Company were itself suing the Louisville Trust Company to recover the possession of the collateral which it had assigned and delivered to it to secure the bondholders, it should be conceded that equity would refuse it relief against the trustee in its effort to maintain the validity of the trust agreement and to retain its possession of the collateral security held by it for the use and benefit of the bondholders.

It is argued that the trust agreement embraces no provision applicable to or controlling the duties of the trustee or the equities of the bondholders in the event of the insolvency of the Title Guarantee Trust Company. Conceding this to be correct, a court of equity should, and will, protect the trustee's possession of the security held by it, and, if necessary for that purpose, compel its delivery to it, for the use and benefit of the innocent holders of the bonds. The Title Guarantee Trust Company is the payor of the bonds, and until they, and the cost of administration of the trust in accordance to the trust agreement, are satisfied, neither it nor the commissioner can have, in no event, more than a mere contingent equity in the collateral for the use and benefit of the unsecured creditors, if any. It and its successor, the banking commissioner, is without right to interrupt, to depreciate, or to invalidate the collateral security in the hands of the trustee by virtue of the trust agreement, or to assert a right adverse to the best interest of the bondholders or

prevent the trustee exercising, bona fide its power conferred upon it by the trust agreement. It is not claimed there are unsecured creditors, but, if there are such creditors, they have no right cognizable in equity until the bonds secured thereby shall have been satisfied out of the proceeds, without a showing that the trustee has, or is, abusing its powers vested in it by the trust agreement, detrimental to their contingent equity. It is the duty of the trustee to protect and retain the collateral for the use and benefit of the bondholders. Rankin, Receiver, v. Emigh, 218 U. S. 27, 30 S. Ct. 672, 54 L. Ed. 915; Citizens' Central National Bank of N. Y. v. Appleton, Receiver, 216 U. S. 196, 30 S. Ct. 364, 54 L. Ed. 443; Manchester, Etc., Ry. Co. v. Concord Ry. Co., 66 N. H. 100, 20 A. 383, 9 L. R. A. 689, 49 Am. St. Rep. 582; Emigh v. Earling, 134 Wis. 565, 115 N. W. 128, 27 L. R. A. (N. S.) 243. The latter case was affirmed by the Supreme Court of the United States in 218 U. S. 27, 30 S. Ct. 672, 676, 54 L. Ed. 915. Under the principles of common honesty and fairness, the bondholders being innocent purchasers, they are in equity entitled to the benefits of the transfer and delivery of the collateral security to the trustee to secure the payment of the bonds respectively owned by them, and even if the Title Guarantee Trust Company or its receiver had the actual physical possession of the collateral security, such bondholders would be entitled to require a return of the collateral security to the trustee for their use and benefit as against the corporation or the banking commissioner. German National Bank v. Meadowcroft, 95 Ill. 124, 35 Am. Rep. 137; Manchester & Lawrence R. R. Co. v. Concord R. R. Co., supra; Logan County National Bank v. Townsend, 139 U. S. 67, 11 S. Ct. 496, 35 L. Ed. 107; Aldrich v. Chemical National Bank, 176 U. S. 618, 20 S. Ct. 498, 44 L. Ed. 611; Central Transportation Co. v. Pullman's Palace-Car Co., 139 U. S. 34, 11 S. Ct. 478, 35 L. Ed. 55; Pullman's Palace-Car Co. v. Central Transportation Co., 171 U. S. 138, 18 S. Ct. 808, 43 L. Ed. 108. The Supreme Court of the United States said:

"Restitution of property obtained under a contract which was illegal, because ultra vires, cannot be adjudged by the force of an illegal contract, yet, as the obligation to do justice rests upon all persons, natural and artificial, if one obtains the money or property of others without authority, the law, inde-

442

pendently of express contract, will compel restitution."

If the Title Guarantee Trust Company had no legal power to take the steps by which the bonds in the hands of the purchasers were secured by the transfer and delivery to the trustee of the collateral security, having used this method of procedure and sold the bonds secured by the collateral and thereby obtained from the purchasers the cash for its bonds, it would be unreasonable and unconscionable to suffer or permit either the corporation or the banking commissioner with the power to incur the cost to have control of the administration, or to compel the surrendering of any or all rights of the trustee to the collateral, and thereby deprive them of the use and benefits of the provisions of the trust agreement.

Other questions are discussed in briefs, but a consideration thereof is not necessary to dispose of the case.

Wherefore the judgment is affirmed.

Whole court sitting, except Chief Justice DIETZMAN, who took no part in the decision of this case.