LEWIS & CO., Inc. v. RADFORD.

Court of Appeals of Kentucky.

March 27, 1953.

Rehearing Denied May 8, 1953.

William Mellor, Louisville, for appellant.

Bullitt, Dawson & Tarrant, Louisville, for appellee.

CULLEN, Commissioner.

Lewis & Company, a corporation controlled by M. W. Lewis, Jr., brought suit in equity against Cyrus S. Radford seeking to be awarded 10 percent of the capital stock, and 10 percent of the profits since 1942, of The Radford Company, a corporation controlled by Cyrus S. Radford. Lewis & Company offered in its petition to pay to Radford an amount equal to one-tenth of the paid-in capital of The Radford Company. From a judgment dismissing its petition, Lewis & Company appeals.

The suit is based primarily on the contention that Radford occupied a fiduciary relationship towards Lewis & Company, by virtue of which Radford became a constructive trustee for Lewis & Company of the amount of stock and profits sued for. It is also contended that there was an ex-

press contract under which Radford agreed to sell Lewis & Company a 10 percent interest in The Radford Company, but it is conceded by Lewis & Company that the proof would not be sufficient to establish an express contract in the absence of a fiduciary relationship between Radford and Lewis & Company; so the entire case seems to rest on the existence of such relationship.

A rather detailed statement of the facts is necessary for an understanding of the issues.

Prior to 1933, The Radford Company of Kentucky (hereinafter called the old Radford Company) was engaged in the soft drink business. Lewis & Company, at that time and at all times subsequent thereto, was primarily engaged in the business of sugar brokerage. In 1929 or 1930, Lewis & Company had acquired 10 percent of the capital stock of the old Radford Company, for a price of approximately $1,000. At that time, and thereafter until 1942, Cyrus Radford owned 28 percent of the stock of the old Radford Company, and his wife, mother and brother owned an additional 56 percent.

In 1933, following the repeal of Prohibition, the old Radford Company acquired a contract for the distribution at wholesale of the products of National Distillers, and thereafter until 1942 the company engaged profitably in the business of a whiskey wholesaler. There was evidence that the profits from the distributing business amounted to as much as $130,000 a year.

Beginning in 1935, the old Radford Company also began purchasing whiskey in bulk, and by 1942 it owned some 9,500 barrels of whiskey.

In 1941, Cyrus S. Radford acquired 8⅓ percent of the capital stock of Lewis & Company, and became a director of that company. Radford and M. W. Lewis, Jr. also were owners of the stock in a corporation, organized in 1939, for the distribution of Canada Dry products.

Early in September 1942 a proposition was advanced for the sale of the majority of the stock of the old Radford Company to Bernheim Distillers, and in October 1942 all of the stock was sold to Bernheim Dis-

tillers, except the 28 percent owned by Cyrus S. Radford individually. It is agreed that the sole purpose of this transaction was to obtain an advantageous price for the bulk whiskey owned by the old Radford Company, and everyone understood that the old Radford Company would be dissolved and the bulk whiskey be distributed in kind. (The dissolution and distribution actually took place in December 1942.) The transaction was handled in this way, rather than selling the whiskey outright, in order to "get around" OPA ceiling prices. It was understood that the distributorship contract with National Distillers would terminate with the sale of the stock to Bernheim, because a corporation owned by a distillery could not hold a wholesaler's license under the Kentucky statutes.

Bernheim Distillers paid some $390,000 for the stock of the old Radford Company, and Lewis & Company received some $54,000 for the shares for which it originally had paid $1,000.

Prior to the completion of the sale of the stock to Bernheim Distillers, Cyrus S. Radford went to New York and made an agreement with National Distillers pursuant to which the latter agreed that following the dissolution of the old Radford Company, the distributor's contract for National Distillers' products would be given to a new corporation to be owned by Radford alone. In November 1942, after the sale of the stock to Bernheim Distillers, Radford purchased, for $17,000, the stock of another distributing corporation, and changed its name to The Radford Company. He also purchased, for $65,000, the physical properties of the old Radford Company, except the bulk whiskey. He then commenced distribution of National Distillers' products under the new distributorship agreement.

In November 1942, about the time Radford was setting up his new corporation, a conference was held by Lewis and Radford in the office of an attorney. At this conference Lewis brought up the question of the two men going back together into the whiskey distributing business for National Distillers, and the attorney advised Lewis not to go back into the business with Rad-

ford until "one or two income tax examinations have been made." Radford said nothing at the conference on the subject of going back into business with Lewis.

In 1945, Lewis approached Radford and announced that he was now ready to take his 10 per cent interest in the new Radford Company. Radford replied that he would not give Lewis any interest in the new company because it would not be satisfactory to National Distillers. Five years later, in 1950, the present suit was filed by Lewis & Company.

The foregoing facts are substantially undisputed. In addition, however, Lewis maintains that before the sale of the stock to Bernheim Distillers he had an express agreement, or at least a very definite "understanding" with Radford, that Lewis & Company was to have the same interest in the new Radford Company that it had in the old company. Radford flatly denies any agreement. We think the evidence warrants the conclusion that Lewis had the impression he would have an interest in the new company, and that Radford contributed to this impression, at least to the extent of being silent when he might have spoken. However, the evidence falls short of establishing an express contract, and, as stated at the outset of this opinion, Lewis concedes that he can prove a contract only on the basis of a silent understanding between two close business associates owing a fiduciary duty to each other.

Lewis first claims the existence of a fiduciary relationship on the ground that he and Radford were joint adventurers. This is on the theory that the two men had been associated over the years in various business enterprises. If the two men had been engaged in a single business enterprise, and had merely adopted the corporate form of doing business as a convenience in carrying out their project, there might be a basis for holding that they were engaged in a joint adventure. See Hathaway v. Porter Royalty Pool, 296 Mich. 90, 295 N.W. 571, 138 A.L.R. 955, Id., 296 Mich. 733, 299 N.W. 451, 94 A.L.R. 967. But the evidence shows clearly that the association of the men arose through their corporations, rath-

er than the corporations arising as a result of their personal association. They were not engaged in a single enterprise, but in various different enterprises. Under these circumstances, it is our opinion that the elements of a joint adventure were not present. See 30 Am.Jur., Joint Adventures, sec. 3, p. 677; 48 C.J.S., Joint Adventures, § 1, p. 801.

■ Lewis next maintains that Radford owed a fiduciary duty to Lewis & Company by virtue of the fact that he was a director of Lewis & Company. It is argued that it was Radford's duty to act in the utmost good faith to further the interest and business of Lewis & Company. See Urban J. Alexander Co. v. Trinkle, 311 Ky. 635, 224 S.W.2d 923. It appears to us that Radford's duty, as concerns the investment in the stock of the old Radford Company, was to see that the investment was so handled or disposed of as to bring the most profit to Lewis & Company. Both parties seem to agree that the sale of the stock to Bernheim Distillers, through which a price could be realized from the bulk whiskey in excess of the OPA ceiling, was a most profitable and advantageous disposition of the investment. The only flaw was that in order to avoid the OPA regulations, it was necessary to sell stock in a going concern, and that all of the assets of the corporation pass by virtue of the sale. It is clear that if the distributing contract with National Distillers had been severed from the rest of the assets of the old Radford Company, and held back, the sale of the stock to Bernheim would not have accomplished the purpose of "getting around" the OPA regulations. Both parties understood this, and Lewis was willing to let the distributing contract go in order to realize the large profit on the bulk whiskey. Lewis admits that his agreement to sell the stock to Bernheim was not in any way conditioned upon his alleged understanding with Radford that they would again engage in the distributing business after the dissolution of the old Radford Company.

Both parties knew that when the stock was sold to Bernheim the distributing contract would cease, because of the law prohibiting a distillery from owning a distributing business. So long as Lewis & Company and the Radford family owned the stock of the old Radford Company, the contract was an asset of that company. A valuable price was received for that asset indirectly, on the sale of the stock to Bernheim, because Bernheim purportedly was not buying merely bulk whiskey, but was buying the stock of a going corporation in the whiskey distributing business. Upon the sale of the stock to Bernheim, the distributing contract ceased, and no longer was an asset to anyone.

The contention of Lewis & Company seems to be that Radford had a duty, to Lewis & Company, to recapture the released asset for the benefit of Lewis & Company. We are unable to carry the fiduciary duty of a corporation director so far, at least in the circumstances that exist here. It must be remembered that Lewis and Radford both were capable businessmen, and they entered into the transaction with Bernheim coldly and deliberately, with the purpose of securing the highest profit legally obtainable. They willingly disposed of their interest in the distributing contract, knowing that the contract would cease to exist. We can find no basis in the principles of equity for imposing the duty on Radford to revive the dead contract for the benefit of Lewis & Company.

■ A further contention of Lewis & Company is that Radford, in his capacity as manager and principal stockholder of the old Radford Company, owed a fiduciary duty to Lewis & Company in its capacity as a minority stockholder in the old Radford Company. In the circumstances presented here, there is no ground for imposing on Radford a duty to Lewis & Company as a minority stockholder any different than the duty he owed to the corporation itself, which was to further the interests and business of the corporation.

No act of Radford impaired or decreased in any way the assets of the old Radford Company, or the value of the stock held by Lewis & Company. Radford did nothing detrimental to the interests of his company. Actually, what Lewis & Company

complains of is a breach of some alleged duty that Radford owed to Lewis & Company as a *former* stockholder in the old Radford Company. Lewis & Company voluntarily ceased to be a stockholder in the old Radford Company, receiving a very advantageous price for its stock, and with full knowledge that its rights in the assets of the old Radford Company were being surrendered. We are not aware of any duty owed by a manager and principal stockholder to a former stockholder, in these circumstances.

The cases relied upon by Lewis & Company, with the possible exception of one case, all deal with situations where a corporation director or officer, or a partner, took action or assumed a position detrimental to the present interests of the corporation or partnership as a going concern. In the one case, Sorenson v. Nielsen, Sup., 240 N.Y.S. 250, a partner, after an agreement had been made that the partnership would be dissolved on a certain date, but before that date had arrived, obtained for himself the partnership's most lucrative account, to commence after the date of dissolution of the partnership. He was held liable for an accounting to his former partner. We think that case is distinguishable, first, because it involved a partnership rather than a corporation; and second, because it involved a situation where the partners had reached no understanding as to what would happen to the assets of the partnership, whereas in the instant case Lewis fully understood that all assets of the corporation would pass from his ownership upon the sale of his stock to Bernheim.

We are of the opinion that Lewis & Company has not shown itself to be entitled to equitable relief. In addition to the other reasons mentioned, some significance must be attached to the fact that Lewis & Company waited eight years before attempting to enforce the alleged constructive trust. This delay carries the implication that Lewis & Company was speculating on the outcome of the new business before making the election to buy the 10 percent interest which it claims it was entitled to purchase.

The judgment is affirmed.