Dallas T. **HELTSLEY** et al., Appellants,

v.

**DISTRICT NO. 23, UNITED MINE WORKERS OF AMERICA, et al., Appellees.**

Court of Appeals of Kentucky.

Oct. 15, 1971.

As Modified on Denial of Rehearing Feb. 18, 1972.

Ralph H. Logan, Hardy, Logan & Tross, Louisville, for appellants.

Albert W. Spenard, Madisonville, for Dist. No. 23 United Mine Workers of America.

William P. Donan, Greenville, for Gibraltar Coal Corp.

REED, Judge.

Dallas T. Heltsley, Charles Schmidt, and Gene Johnson were discharged by their employer, Gibraltar Coal Corporation. The employees were officials [1] of Local Union No. 1092 of United Mine Workers of America. A collective bargaining agreement, which provided for arbitration of grievances, was in effect between the parent union and an association of employers of which Gibraltar was a member at the time of the discharge. The union unsuccessfully sought the institution of an unfair labor practice charge against the employer by the N.L.R.B.; the Union's claim was that the discharge was wrongful.

Thereafter, the union preferred a grievance charge against the employer, again on the basis that the employees had been wrongfully discharged. The arbitrators selected by the union and employer were unable to agree, and the dispute was submitted to an umpire, who found that the discharges were proper. Then the discharged employees sued the union and their former employer in the state circuit court; they alleged that the union and Gibraltar had conspired to effect their wrongful discharge from employment and that the union had not fairly represented them. They also charged that the umpire's award was tainted by fraud and collusion and that his decision, on its face, showed manifest unfairness and error.

The union and Gibraltar moved to dismiss the complaint filed by the discharged employees. The complaint was twice amended after the trial judge had ruled it insufficient. Finally, the third amended complaint was also dismissed and the discharged employees have appealed to this court and assert that the trial court should have disposed of their suit on its merits, after a trial. The critical question is whether the employees' pleading together with its amendments, in view of the record, demonstrated a triable cause of action.

A work stoppage occurred at the employer's premises; the premises were picketed by the "prospect drillers" who were members of a local other than that with which the appellants were affiliated, but which was a component of the same parent union. The work stoppage and picketing were in breach of a "no strike" collective bargaining agreement. The employer claimed that appellants aided, encouraged, and participated in the illegal strike and failed in their explicit contractual duty to use their best efforts to terminate the illegal work stoppage; it was upon these expressed grounds that the employer discharged the appellants.

The record contains the specific findings of the N.L.R.B. that the discharges were

1. Heltsley was president and with Schmidt and Johnson composed "the mine committee" of the Local.

proper and not an unfair device to punish appellants for legitimate union activities. The N.L.R.B. decision [2] was reviewed and confirmed by its national general counsel. The record also demonstrates that extensive evidence was presented to the arbitrators. The opinion of the umpire evidences a thorough consideration of all the evidence. The appellants' pleadings do not claim that pertinent evidence was omitted. Although the pleadings do allege that the umpire had received a political contribution from the union when he was a candidate for public office, the appellants failed to allege that they objected to his acting after his appointment was known. They do not state that any suggestion of a conspiracy between the employer and the union was presented to the arbitrators or to the umpire or to the N.L.R.B. They do not allege that the umpire had knowledge of or was a participant in any conspiracy.

■ From our decisions in Armco Steel Corporation v. Perkins, Ky., 411 S.W.2d 935; Moore v. Local U. No. 89, Inter. Bro. of Teamsters, Etc., Ky., 356 S.W.2d 241; and Smith v. Hillerich & Bradsby Co., Ky., 253 S.W.2d 629, and from the decisions of the United States Supreme Court in Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370; Smith v. Evening News Ass'n, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246; and Dowd Box Co. v. Courtney, 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483, the steady, but tortuous, path of the development of the idea of concurrent jurisdiction by the federal and state courts to serve as available avenues for the disposition of labor disputes may be observed. It now seems clear that while the National Labor Relations Board retains exclusive primary jurisdiction over unfair labor practices as explicated in 29 U.S.C., Sec. 158, and as recognized by the Supreme Court in San Diego Bldg. Trades Council, Millmen's U., Local 2020 v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775; nevertheless, where the alleged unfair labor practice also violates a collective bargaining agreement, the jurisdiction of the courts (state and federal) is not displaced, and the judiciary remains the place where the parties to a collective bargaining agreement should seek to enforce their contract. This is made evident by the Supreme Court's interpretation of Sec. 301(a) of the Labor Management Relations Act of 1947 (29 U.S.C., Sec. 185) in Dowd Box Co. v. Courtney cited above.

■ If appellants' claim was restricted to unfair representation of them by their union, it could well be argued that this addressed itself to the N.L.R.B. as a primary matter, and the state courts are precluded, as an original action proposition at the least, from entertaining it under the Garmon doctrine. Appellants' claim of the existence of a breach of the duty of fair representation by their union was not supported by the facts, according to the N.L.R.B. Appellants assert, however, that the breach by their union accomplished a tainted and unfair arbitration result under a collective bargaining agreement. Hence, we conclude that although the courts have jurisdiction of the claim, its validity as a triable cause of action must be determined by focusing on the arbitration accomplished and not on the alleged unfair labor practice per se, which has been rejected by the N.L.R.B. and is now repeated in subsequent state court proceedings in conclusionary terms.

In Smith v. Hillerich & Bradsby Co., Ky., 253 S.W.2d 629, we said:

"The law favors and encourages the settlement of controversies by arbitration, and arbitrators are not expected or required to follow the strict rules of law, it being sufficient that they have due regard for natural justice. If the parties wanted exact justice administered according to the forms of law they should not have agreed to substitute a private forum for a court of law."

2. A finding by the Regional Director.

In the instant case, the appellants accepted the benefits of the collective bargaining agreement and are, of course, bound by its provisions governing the adjudication of grievances. Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 923, 1 L.Ed.2d 972 demonstrates that congressional policy is in favor of agreements to arbitrate. Local 174 Teamsters, etc. of America v. Lucas Flour Company, 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 holds that state courts in exercising jurisdiction under Sec. 301(a) of the Labor Management Relations Act of 1947, wherein a collective bargaining contract is necessarily involved, should apply federal substantive labor law. Boys Markets Incorporated v. Retail Clerk's Union, Local 770, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199, is the latest expression from the Supreme Court which is relevant. In this opinion, the importance of arbitration as the means of settling labor disputes is emphasized. For a critique of the result reached in the case, see 59 Ky.L.J. 755. There is general agreement, however, that arbitration is favored as a matter of federal policy.

 Our examination of the record in this case has convinced us that after three attempts the appellants are unable to allege a state of facts sufficient to warrant judicial examination of the award that resulted from arbitration. We are not inclined to explore how specifically the pleader must frame his complaint under the "particularity" requirement of CR 9 so far as averments relating to fraud are concerned. It appears to us that the umpire's award is confirmatory of the N.L.R.B. findings. It can hardly be characterized as unfair on its face. The conduct of the arbitration proceedings was not objected to on allowable grounds. Where a party undertakes to collaterally attack the award of an umpire in a case such as this, certainly more definite statements of fact must be required than are present. We must assess the sufficiency of the appellants' showing in view of the type of issue presented. Cf. Thomas v. Consolidation Coal Company, 380 F.

2d 69 (C.A. 4), cert. denied, 389 U.S. 1004, 88 S.Ct. 562, 19 L.Ed.2d 599.

It appears to us that appellants were afforded full opportunity to state their claim in full detail and that they undertook to do so. The contents of the complaint as amended with the inferences to be drawn from them, on the whole record, will not support their claim for relief; hence, as pointed out in Security Trust Company v. Dabney, Ky., 372 S.W.2d 401, a motion to dismiss serves substantially the same purpose as a motion for summary judgment and should be sustained. That is precisely what the trial judge did.

 Appellants filed a petition for rehearing. In this petition for the first time they cite Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80, and assert that it is dispositive in the instant case. We disagree. The Conley case involved a situation under the Railway Labor Act, 45 U.S.C.A. 151, et seq., whereby members of a union charged in their complaint that their union discriminated against them because of their race. The complaint alleged that the discrimination consisted of failure to protest in any way the discharge, demotion or removal of seniority rights for the Black complainants while the White members of the same union were afforded full representation in protest of such actions affecting them. In the instant case, the union preferred an unfair labor practice charge to the NLRB and processed a grievance completely through the arbitration route provided in the collective bargaining agreement. We are of the view that our disposition of the instant case is not inconsistent with the Conley case nor is it inconsistent with the basic holding in Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842, when that opinion is considered in its factual context compared with the factual context presented by this case.

The judgment is affirmed.

All concur.