**UNITED BRICK AND CLAY WORKERS OF AMERICA, LOCAL NO. 486 et al., Appellants,**

**v.**

**LEE CLAY PRODUCTS COMPANY, INC., Appellee.**

Court of Appeals of Kentucky.

Dec. 15, 1972.

Alvin B. Trigg, Wallace, Turner & Trigg, Lexington, for appellants.

James U. Smith, Jr., Louis E. Woolery, Smith & Smith, Louisville, William C.

Clay, Jr., Clay & Marye, Mt. Sterling, for appellee.

VANCE, Commissioner.

United Brick and Clay Workers of America, Local 486 et al, hereinafter referred to as the "Union," have appealed from a summary judgment of the Rowan Circuit Court which prohibited the Union from submitting to arbitration an alleged industrial dispute.

Appellee, Lee Clay Products Company, Inc., hereinafter referred to as the "Company," was the operator of clay mines and clay-pipe manufacturing facilities in Rowan County. The controversy arose concerning a collective bargaining agreement entered into between the Union and the Company on May 20, 1965, and a supplemental agreement signed by the parties on November 14, 1970.

The latter agreement was necessitated by the planned termination of the Company's operations and accompanying gradual discharge of all the employees. The agreement of May 20, 1965, will be referred to hereinafter as the "Original Agreement" and that of November 1970 as the "Plant Closure Agreement."

This litigation centers around Sections Five and Six of the Original Agreement regarding benefits to employees for holidays and vacations. The applicable provisions with which we must deal are as follows:

"SECTION V"

"HOLIDAYS (2) In order for an employee to be eligible to receive pay for any of the aforementioned holidays, not worked, * * * such employee must have: (c) worked the full schedule on his last regularly scheduled work day immediately preceding and his first regularly scheduled work day immediately following the holiday except that either of such scheduled work days shall be considered worked if an employee after reporting for work is prevented from working for reasons other than personal.

"SECTION VI"

"VACATIONS: Each employee who has been continuously employed by the Company for one year as of May 1, 1965, shall be entitled to one week's vacation with pay. Each full-time employee who has been employed continuously by the Company for five years and less than fifteen years as of May 1, 1965, shall be entitled to two weeks vacation with pay * * *.

"The same procedure for determining vacation pay shall be followed for the second year using May 1, 1966, as the date of entitlement; and for the third year using May 1, 1967, as the date of entitlement * * *.

"Pay for the vacation period will be based on the total straight time earnings for the twelve-month period immediately preceding May 1. * * *."

The agreement of November 14, 1970, by its own terms was entered into and negotiated by the parties in contemplation of the plant's permanent closure and in an effort to facilitate an orderly and gradual discharge of all employees. However, whether the Plant Closure Agreement terminated the Original Agreement or merely extended it is an important factor. The precise wording of the Plant Closure Agreement provided:

"The collective bargaining agreement between the Company and the Union * * * (of May 20, 1965) which is presently in effect and which would otherwise terminate on November 14, 1970, *shall be and it hereby is extended* and continued in effect through August 1, 1971 to the extent that said collective bargaining agreement is not inconsistent with any provision of this agreement; *whereupon it shall terminate and be of no further force and effect* * * *. Both parties hereto recognize and agree,

however, that the seniority and layoff provisions of said collective bargaining agreement were designed and agreed upon in contemplation of a continuing plant operation, and *do not lend themselves to the situation of plant closure and the orderly closing of the Plant,* and said provisions are therefore cancelled and deleted, and the principles stated * * * (in the Closure Agreement) shall be followed in lieu thereof." (Emphasis added.)

Following a schedule set forth in the Plant Closure Agreement, thirty-nine employees were permanently laid off prior to Thanksgiving Day 1970, and an additional twenty-four employees laid off prior to Christmas Eve 1970. Both the holidays were recognized in the Original Agreement as "paid holidays." However, none of the employees laid off prior to the respective holidays were paid therefor because they failed to satisfy the contractual requirement of Section V of the Original Agreement necessitating the working on the "first regularly scheduled work day immediately following the holiday."

Similarly, those employees laid off prior to May 1, 1971, were paid no vacation benefits for the pay period of May 1, 1970— May 1, 1971, because of the requirement of Section VI of the Original Agreement calling for actual employment by the Company on May 1, 1971, in order to be eligible for the pay.

Demands by the Union that the employees be paid the holiday and vacation benefits were refused by the Company based on the provisions of the Original Agreement. Demands by the Union to submit the dispute to arbitration as provided for under the Original Agreement were refused by the Company which took the position that such demands were not subject to the grievance and arbitration procedures of its contract with the Union. The pertinent portions of Section VII of the Original Agreement regarding the arbitration of "disputes" are as follows:

"* * *. The arbiter shall have jurisdiction and authority to interpret and apply the provisions of this Agreement insofar as shall be necessary to the determination of such grievances, *but he shall have no power to add to, subtract from, or modify any of the terms of this Agreement * * *.*

"* * *. It is specifically understood that the provisions of this Section respecting appeal to an arbiter *shall not apply to matters which may arise involving general wage rates, nor involving changes in, or termination of this Agreement."* (Emphasis added.)

Upon the Company's refusal to submit the dispute to arbitration by agreement, the Union unilaterally contacted the American Arbitration Association for the purpose of initiating arbitration procedures. The Company instituted this action for declaratory judgment and sought an injunction to prevent the alleged unauthorized arbitration.

After examining affidavits, pleadings and memoranda and hearing arguments of counsel, the trial court entered summary judgment and issued a permanent injunction enjoining the Union from submitting the claims to arbitration. This was based upon a finding that the issues in dispute were not arbitrable because they involved changes in or the termination of the collective bargaining agreement and thus were excluded from arbitration under Section Seven of the Original Agreement and upon a conclusion of the court that the provisions of the collective bargaining agreement were not subject to any interpretation favorable to the Union.

■ We do not believe the matters in dispute involve changes in or the termination of the collective bargaining agreement. The dispute concerned the right of discharged employees to holiday and vacation pay under the terms of the Original Agreement. The Plant Closure Agreement, of course, looked to the eventual ter-

mination of the Original Agreement on August 1, 1971, but until that date the provisions of the Original Agreement relating to holiday and vacation pay remained in effect and unchanged.

There is no question but that the principles of federal substantive labor law are controlling in this case even though the matter is litigated in state court. Heltsley v. District No. 23, United Mine Workers of America, Ky., 477 S.W.2d 134 (1971) and Textile Workers of America v. Lincoln Mills of Alabama, 353 U.S. 448, 77 S. Ct. 923, 1 L.Ed.2d 972 (1957). Federal substantive law has established a policy of judicial deference to arbitration and judicial restraint, prior to arbitration, from intervention into the interpretation of the provisions of collective bargaining agreements which provide for arbitration. United Steel Workers of America v. American Manufacturing Company, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steel Workers of America v. Warrior and Gulf Navigation Company, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), and United Steel Workers of America v. Enterprise Wheel and Car Corporation, 363 U.S. 593, 80 S.Ct. 1358, 4 L. Ed.2d 1424 (1960).

In United Steel Workers of America v. Warrior and Gulf Navigation Company, supra, it was held that an order to arbitrate a particular grievance should not be denied unless it could be said with positive assurance that the asserted dispute was not subject to the arbitration clause of the agreement, with doubts resolved in favor of coverage.

The judicial deference and restraint established by federal policy extend so far as to require the submission to arbitration of patently baseless claims. United Steel Workers of America v. American Manufacturing Company, supra. In *American Manufacturing Company* the Supreme Court reversed a holding of the Sixth Circuit Court of Appeals, 264 F.2d 624, that a grievance was not subject to arbitration because it was frivolous and patently baseless.

Justice Douglas, speaking for the Court, said:

" * * *. The lower courts in the instant case had a like preoccupation with ordinary contract law. The collective agreement requires arbitration of claims that courts might be unwilling to entertain. In the context of the plant or industry the grievance may assume proportions of which judges are ignorant. Yet, the agreement is to submit all grievances to arbitration, not merely those that a court may deem to be meritorious. * * *.

"The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious. The processing of even frivolous claims may have therapeutic values of which those who are not a part of the plant environment may be quite unaware."

In a footnote the court cited with approval the following quotation from Cox, Current Problems in the Law of Grievance Arbitration, 30 Rocky Mt.L.Rev. 247, 261 (1958):

" 'The typical arbitration clause is written in words which cover, without limitation, all disputes concerning the interpretation or application of a collective bargaining agreement. Its words do not restrict its scope to meritorious disputes or two-sided disputes, still less are they limited to disputes which a judge will consider two-sided. Frivolous cases are often taken, and are expected to be taken, to arbitration. What one man considers frivolous another may find meritorious, and it is common knowledge in

industrial relations circles that grievance arbitration often serves as a safety valve for troublesome complaints. Under these circumstances it seems proper to read the typical arbitration clause as a promise to arbitrate every claim, meritorious or frivolous, which the complainant bases upon the contract. The objection that equity will not order a party to do a useless act is outweighed by the cathartic value of arbitrating even a frivolous grievance and by the dangers of excessive judicial intervention.' "

Though it is difficult to follow as a concept of law, it has been held that an issue must be submitted to arbitration even though under the provisions of the agreement only one interpretation is possible. New Bedford Defense Products Division v. Local No. 1113, etc., 258 F.2d 522, First Circuit (1958).

■ Notwithstanding the judicial deference to submission of grievances to arbitration the courts may set aside and refuse to enforce the award of an arbitrator who exceeds the authority given him by the terms of the collective bargaining agreement or who interprets its provisions in a clearly unauthorized manner. United Steel Workers of America v. Enterprise Wheel and Car Corporation, supra; Amanda Bent Bolt Company v. International Union, 451 F.2d 1277, Sixth Circuit (1971).

■ It seems to us federal substantive law, which we are bound to apply, clearly militates against a prior judicial determination of the merits of a grievance which is subject to arbitration under the terms of the collective bargaining agreement. In this case there are provisions of the agreement which are determinative of the issues in dispute. The Union claims that the provisions of the Original Agreement may and should be interpreted to allow vacation and holiday pay under the circumstances of this case. The Company interprets the agreement in a way which would deny the claim. The settlement of this dispute will require

an interpretation of the provisions of the agreement. Federal substantive law requires that that interpretation be made by an arbitrator and this is true even though only one result is possible.

Actually it is difficult in any case to say with assurance that only one interpretation of a contract provision is possible. In ordinary commercial contracts skilled lawyers have difficulty in stating the terms in such precise language that all ambiguity is eliminated. In labor arbitrations another dimension may be added, for in United Steel Workers of America v. Warrior and Gulf Navigation Company, supra, the Supreme Court said:

"The labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law—the practices of the industry and the shop—is equally a part of the collective bargaining agreement although not expressed in it. * * *."

We will not express our views upon the merits of the dispute nor will we assume that the arbitrator in resolving it will exceed his authority or will either add to or subtract from the provisions of the agreement. He must simply interpret the provisions of the agreement as they are written and apply them to the facts of this case.

The appellee has furnished us with a well-written brief in which some of the cases relied on by appellant and in this opinion were distinguished from this litigation on their factual situations, but the cardinal principles set forth herein remain. Radio Corporation of America v. Association of Scientists and Professional Engineering Personnel, 414 F.2d 893, Third Circuit (1969), was cited by appellee for the proposition that the Union cannot obtain arbitration by simply couching its grievances in the language of contract interpretation. The issue there however was not the interpretation of provisions of the agreement (which would be for the arbitrator) but whether in fact there was any provision of the agreement applicable to the

dispute; a matter for the court to determine. Atkinson v. Sinclair Refining Company, 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed. 2d 462 (1962), held that a dispute could not be forced to arbitration where the contract provisions relating to arbitration were not subject to an interpretation that the dispute could be submitted to arbitration, but that case is inapplicable to the facts in this case.

The judgment is reversed with directions that a new judgment be entered dissolving the injunction and dismissing the complaint.

All concur.